IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-657-DGK |
| | ) | |
| DEREK LUEBBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER DENYING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This case arises out of a soured business relationship between Plaintiff Global Control Systems, Inc. ("GCS") and its former employee, Defendant Derek Luebbert ("Luebbert"). Around the time he left GCS's employ, Luebbert founded his own company, Defendant Atlas Industrial Solutions LLC ("Atlas"), and began soliciting work from a GCS client, Defendant Alliant Techsystems Inc. ("ATK"). Now before the Court is GCS's motion for a preliminary injunction to enjoin Luebbert from working for ATK (Doc. 9). Because GCS has failed to demonstrate that it will suffer irreparable harm without an injunction, the motion is DENIED.

**Findings of Fact**

The Court held evidentiary hearings on November 10, 2014, and February 9, 2015, in Kansas City, Missouri, in which the parties presented documentary exhibits and testimony from witnesses Manuel David ("David") and Luebbert. Considering the evidence presented, the Court finds the following facts for the limited purpose of resolving this motion[1]:

---

[1] Although the Court heard a great deal of testimony and received several exhibits, it recites here only the factual findings that are material to resolving this motion. The Court emphasizes that its "findings [and] observations as to the governing law made in this opinion[] are tentative and provisional, in the sense that different findings or conclusions might be warranted after a trial on the merits." *Indep. Fed'n of Flight Attendants v. Trans World Airlines*, 655 F.2d 155, 159 (8th Cir. 1981); *see also* Fed. R. Civ. P. 65(a)(2) ("[T]he court must preserve any party's right to a jury trial.").

David is the president of GCS, a firm that provides controls engineering services. GCS provides these services at customer sites. Customer relationships are crucial to GCS's business. At present, GCS has five or six customers.

One GCS customer was ATK, which operates a government-owned facility in Independence, Missouri, that manufactures bullets. GCS performed discrete jobs for ATK under purchase orders. In the typical scenario, an ATK engineer would notify GCS of a controls engineering need and invite GCS to submit a proposal for that work. In its proposal, GCS wrote a description of the necessary services and a cost estimate. Purchase orders could later be amended if ATK and GCS agreed that more man-hours were needed, perhaps because the scope of the project had expanded.

Luebbert worked for GCS as a controls engineer beginning in August 2006. GCS assigned Luebbert to work at ATK as GCS's representative.

As a condition of his employment, Luebbert signed a contract of employment ("the Employment Agreement"). The Employment Agreement contained a non-compete provision ("the Non-Compete Clause"), which states in pertinent part:

> Derek [Luebbert] agrees and covenants that for a period of 3 year(s) following the termination of this Agreement, whether such termination is voluntary or involuntary, Derek [Luebbert] will not directly or indirectly engage in any business competitive with GCS or work directly or indirectly for GCS customers. This covenant shall apply to the geographical area that includes the area within a 100-mile radius of Lenexa, KS.

Because ATK was a GCS customer and because ATK's Independence plant is located within 100 miles of Lenexa, Kansas,[2] the Non-Compete Clause prohibited Luebbert from working for ATK following the termination of his employment.

---

[2] Although no party adduced evidence about the distance between ATK's plant and Lenexa, an online Google Maps search indicates that it is approximately thirty miles from Lenexa city limits. *See* Google Maps, www.maps.google.com (last visited Feb. 23, 2015). Because Google Maps is a "source[] whose accuracy cannot reasonably be questioned" when used to determine general distances, the Court takes judicial notice of the results of

2

Case 4:14-cv-00657-DGK   Document 58   Filed 02/23/15   Page 2 of 9

On May 26, 2010, Luebbert informed GCS that he was resigning the next day. Unbeknownst to GCS, Luebbert had formed a competing company, Atlas. As GCS later found out, on the same day he resigned, Luebbert obtained a purchase order from ATK on Atlas's behalf. As he knew what GCS charged its customers, Luebbert submitted a proposal to do work at the exact dollar rate GCS was charging. This purchase order was labeled D37395 ("P.O. '95"). Once he began working for ATK, Luebbert had access to ATK's budgets and sole sourcing forms, which gave him influence on whether GCS could bid on new projects or additional scopes of work.

When GCS discovered that Luebbert was working at ATK, a violation of the Non-Compete Clause, it felt it should have been awarded P.O. '95. Wanting to be made whole, GCS began negotiating with Luebbert about settling its claims against him. The negotiation culminated in the Settlement Agreement, signed June 17, 2010. GCS agreed to suspend the Non-Compete Clause against Luebbert for no more than six months so that he could finish P.O. '95. Upon the conclusion of the suspension, the Non-Compete Clause would resume and remain in force for three years. In return, Luebbert agreed to pay GCS a certain amount of his revenue from P.O. '95.

After the Settlement Agreement went into effect, ATK indicated to GCS that it wanted Luebbert to keep working at its facility. GCS and Luebbert signed an Amendment to the Settlement Agreement on January 28, 2011, which suspended the Non-Compete Clause again, this time until Luebbert finished work on P.O. '95 at ATK. In exchange, Luebbert agreed to pay GCS fifty percent of all revenue it earned from ATK for P.O. '95. The work on P.O. '95 ended upon its expiration on July 31, 2013.

---

this Google Maps search. *See* Fed. R. Evid. 201(b)(2), (c)(1); *see also Citizens for Peace in Space v. City of Colo. Springs,* 477 F.3d 1212, 1218 n.2 (10th Cir. 2007) (taking judicial notice of online distance calculations made with Google Maps).

Today, Luebbert still works at ATK. He works there between fifty and eighty hours per week for Atlas, which subcontracts its work from GCS competitor Defendant Midwest Controls LLC ("Midwest"). Within the two years preceding the 2015 preliminary injunction hearing, Luebbert also worked for companies called VVF and MGP. It is unclear whether VVF and MGP are competitors to GCS.

GCS formerly enjoyed a strong relationship with ATK. At one time, GCS had thirty projects with ATK. GCS has not worked at ATK since the end of 2012. GCS is no longer on ATK's Qualified Contractor's List to perform work at its Independence facility, which means ATK is less likely to contact GCS to bid on work. If GCS still had a strong relationship with ATK, then its absence from the Qualified Contractor's List would be irrelevant. David attributes this decline in business to Luebbert. He believes that by quitting right in the middle of a project, as Luebbert did, GCS was left in a "lurch" that was very detrimental to GCS's image and reputation. David also opined that because Luebbert had access to budgets and sole sourcing forms at ATK, he could steer ATK business away from GCS.

The parties introduced no evidence of Luebbert soliciting other companies, besides ATK, in violation of his Non-Compete Clause. GCS has no idea what purchase orders Luebbert may have issued to its other clients.

On April 5, 2013, Luebbert sent an email to GCS in which he indicated that he would no longer comply with the terms of the Amendment. He is no longer making payments to GCS. This litigation ensued.

## Standard of Review

GCS moves for a preliminary injunction under Federal Rule of Civil Procedure 65(a). A preliminary injunction serves "to preserve the status quo until, upon final hearing, a court may

4

grant full effective relief." *Sanborn Mfg. Co. v. Campbell Hausfeld/Scott Fetzer Co.*, 997 F.2d 484, 490 (8th Cir. 1993). Accordingly, in a ruling on a motion for a preliminary injunction, a court may consider "evidence that is less complete than in a trial on the merits." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981).

In determining whether to grant preliminary injunction under Rule 65(a), the Court considers the so-called "*Dataphase* factors": (1) the threat of irreparable harm to the movant; (2) the balance between this harm and any injury that granting the injunction will inflict on the non-moving party; (3) the likelihood that the moving party will prevail on the merits; and (4) the public interest. *Novus Franchising, Inc. v. Dawson*, 725 F.3d 885, 893 (8th Cir. 2013) (citing *Dataphase Sys., Inc. v. C.L. Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). Although the *Dataphase* factors are ordinarily balanced together, *W. Publ'g Co. v. Mead Data Cent., Inc.*, 799 F.2d 1219, 1222 (8th Cir. 1986), a movant's complete failure to show the first *Dataphase* factor—irreparable injury—is "an independently sufficient ground upon which to deny a preliminary injunction." *Novus Franchising*, 725 F.3d at 893. An injunction is an extraordinary remedy and the movant, GCS, bears the burden of establishing the need for such relief. *Lankford v. Sherman*, 451 F.3d 496, 503 (8th Cir. 2006).

**Discussion**

Count I of the complaint charges Luebbert with Missouri common law breach of contract. Specific to this motion, GCS alleges that Luebbert breached the Non-Compete Clause in the Employment Agreement, as modified by the Settlement Agreement and Amendment. Suggestions Supp. Pl. Global Control Systems, Inc.'s Mot. for Prelim. Inj. 13–16 (Doc. 10). Accordingly, GCS moves to preliminarily enjoin Luebbert from "working or contracting for

5
Case 4:14-cv-00657-DGK   Document 58   Filed 02/23/15   Page 5 of 9

[Atlas], Midwest, ATK and any other individual or entity in violation of the Employment Agreement, Settlement Agreement and Amendment" (*Id.* at 18).

The first *Dataphase* factor examines whether the movant will suffer irreparable harm absent an injunction. Irreparable harm is present when legal remedies are inadequate. *Beacon Theatres, Inc. v. Westover*, 359 U.S. 500, 506–07 (1959). For an injunction to issue, the party seeking an injunction must demonstrate a likelihood, not a mere possibility, that irreparable harm will occur without an injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *S.J.W. ex rel. Wilson v. Lee's Summit R-7 Sch. Dist.*, 696 F.3d 771, 779 (8th Cir. 2012) ("Speculative harm does not support a preliminary injunction."). The movant need not show there has been past irreparable harm, but it must establish "there exists some cognizable danger of recurrent violation." *United States v. W.T. Grant Co.*, 345 U.S. 629, 633 (1953).

Harm to reputation and customer goodwill can support a finding of irreparable harm. *Med. Shoppe Int'l, Inc. v. S.B.S. Pill Dr., Inc.*, 336 F.3d 801, 805 (8th Cir. 2003). In the context of non-compete agreements, an employee can wreak irreparable harm if he poses a "real threat" that his continued efforts will cause his former employer's clients to leave. *Safety-Kleen Sys., Inc. v. Hennkens*, 301 F.3d 931, 935–36 (8th Cir. 2002). That threat can be borne out if the employee is "affirmatively soliciting business" from his former employer's clients, *N.I.S. Corp. v. Swindle*, 724 F.2d 707, 710 (8th Cir. 1984), such as making a business call to those clients with his new employer. *Church Mut. Ins. Co. v. Sands*, No. 14-CV-3119-S-DGK, 2014 WL 3907831, at *2–3 (W.D. Mo. Aug. 11, 2014).

On the other hand, the party breaching a non-compete agreement might not pose irreparable harm if the breach fails to erode goodwill earned by the non-breaching party, even if the breaching party benefits. *Bandag, Inc. v. Jack's Tire & Oil, Inc.*, 190 F.3d 924, 926 (8th Cir.

1999).  There may also be no irreparable harm if the non-breaching party can "survive, perhaps nearly financially intact, by pursuing other avenues of business."  *Modern Computer Sys., Inc. v. Modern Banking Sys., Inc.*, 871 F.2d 734, 737–38 (8th Cir. 1989) ("[E]ven if [the movant] loses the eighty-six clients to whom it has sold [the alleged breaching party's] systems, it will still have a customer base in excess of 310.  The record contains abundant indications that [the movant] has other significant avenues of business (encompassing both sales and maintenance) despite the deterioration of the relationship with [the breaching party].").

GCS claims that, absent an injunction, Luebbert will irreparably damage GCS's goodwill.  For present purposes, the Court assumes that Luebbert has violated the Non-Compete Clause in the past and is continuing to violate it.  Under that assumption, Luebbert caused past irreparable harm to GCS by forming his own company and sending purchase orders to ATK, which hampered GCS's ability to freely do business with ATK.  The question then is whether there is a likelihood or "cognizable danger" that Luebbert will, in the future, cause more irreparable harm to GCS through his violations of the Non-Compete Clause.  *See Winter*, 555 U.S. at 22; *W.T. Grant Co.*, 345 U.S. at 633.

The Court holds there is not.  Luebbert has worked continuously at ATK since completing P.O. '95 in July 2013.  Because he is still working there between fifty and eighty hours per week with no indication of stopping, the Court believes he is likely to continue working there in violation of the Non-Compete Clause.  However, regardless of whatever harm Luebbert caused in the past by taking ATK as a client, GCS has not shown that he will cause any more irreparable harm.  Specifically, Luebbert does not pose a "real threat" of stealing any more clients from GCS.  *Cf. Safety-Kleen Sys., Inc.*, 301 F.3d at 935.  GCS does not know of any purchase orders Luebbert has submitted to other clients.  Rather, no evidence suggests he is

actively soliciting or influencing GCS customers for his own benefit. *Cf. Church Mut. Ins. Co.*, 2014 WL 3907831, at *2–3; *N.I.S. Corp.*, 724 F.3d at 710. Although he used GCS rates and pricing knowledge to secure ATK as a client, the notion that he will again use that insider knowledge to steal other GCS clients and harm the GCS brand name is mere speculation. *See S.J.W.*, 696 F.3d at 779 (prohibiting the court from relying on speculative harms to grant a preliminary injunction). Taking away one client also has not put GCS out of business, as it still has five or six other customers. *See Modern Computer Sys., Inc.*, 871 F.2d at 738.

Nor does Luebbert pose a "real threat" of further damaging relations between GCS and *ATK*. GCS has not done *any* business at ATK for over two years; it has not shown how Luebbert can possibly make those relations worse. *See Bandag, Inc.*, 190 F.3d at 926.

Turning from GCS clients to GCS competitors, insofar as Luebbert's work for Midwest, VVF, and MGP constitutes separate violations of the Non-Compete Clause,[3] the record does not indicate how Luebbert poses future irreparable harm to GCS by associating with them. *See S.J.W.*, 696 F.3d at 779. Simply working for a competitor is insufficient; GCS must show how Luebbert is damaging its goodwill and reputation by associating with Midwest, VVF, or MGP.

The only possible continuing harms posed by Luebbert to GCS are the loss of payments under the fifty-percent scheme established by the Amendment. The remedy for this breach of contract is legal, not equitable. *See* Defs.' Suggestions Opp'n to Pl.'s Mot. Prelim. & Permanent Inj. 4 (Doc. 14 at 4 ("[A]t bottom, Plaintiff's only complaint is that they are not getting their share of the money from this work. That is a math problem easily solved with a calculator at the end of the trial.")). Because legal remedies are adequate, there is no irreparable harm present if the Court does not issue an injunction. *See Beacon Theatres, Inc.*, 359 U.S. at 506–07.

---

[3] The Court assumes this in part because the record does not contain enough information for the Court to determine whether these companies are located within 100 miles of Lenexa, a condition for the Non-Compete Clause to apply.

GCS has not demonstrated that Luebbert is likely to cause more irreparable harm than he already has, so the Court need not proceed to the remaining *Dataphase* factors. *See Novus Franchising*, 725 F.3d at 893. Although GCS may ultimately be entitled to legal or equitable relief, the Court declines at this time to issue an injunction. GCS's motion is DENIED.

## Conclusion

For the reasons above, GCS's Motion for Preliminary Injunction (Doc. 9) is DENIED.

**IT IS SO ORDERED.**

Date:  February 23, 2015                   /s/ Greg Kays
                                           GREG KAYS, CHIEF JUDGE
                                           UNITED STATES DISTRICT COURT