IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-657-DGK |
| | ) | |
| DEREK LUEBBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## ORDER DENYING MOTION TO LIMIT OR TERMINATE KRAHENBILL'S DEPOSITION

This matter is before the Court on a discovery dispute. Defendant Midwest Controls LLC ("Midwest") moves under Federal Rule of Civil Procedure 30(d)(3) to limit or terminate the deposition of Brandon Krahenbill (Doc. 41). Finding that neither Krahenbill nor Midwest will be unreasonably oppressed if Krahenbill's deposition resumes, the Court DENIES the motion.

### Background

Defendant Derek Luebbert signed a non-compete agreement with Plaintiff Global Control Systems, Inc. ("GCS"). GCS has sued Defendant Midwest Control LLC ("Midwest") for tortious interference with contract (Count II) for working with Luebbert despite allegedly knowing about his non-compete agreement with GCS. Midwest is GCS's competitor in the field of controls engineering.

While deposing Brandon Krahenbill ("Krahenbill"), the owner of Midwest, GCS asked Krahenbill to identify the contractors that work for Midwest, and the customers for whom Midwest performs work. Midwest objected, characterizing the information as irrelevant.

Krahenbill nonetheless answered that Midwest has not used Luebbert to perform work for any of GCS's competitors. Krahenbill has also offered to answer questions from GCS about any

particular customer whom it believes that: "Midwest Controls or Luebbert has worked with; or Midwest Controls or Luebbert has allegedly stolen; Midwest Controls somehow illegally obtained through Luebbert or otherwise" (Doc. 41 at 2).

GCS demurred, and insists on asking generally what contractors Midwest uses and what clients it services. The parties unsuccessfully attempted to resolve this issue with the Court during Krahenbill's deposition (Doc. 39 (withholding ruling on this dispute until the parties could fully brief the issue)). The parties suspended the deposition. Midwest now moves to limit or terminate the deposition.

## Discussion

"At any time during a deposition, the deponent or a party may move to terminate or limit it on the ground that it is being conducted in bad faith or in a manner that unreasonably annoys, embarrasses, or oppresses the deponent or party." Fed. R. Civ. P. 30(d)(3)(A). Midwest does not allege that GCS was annoying or embarrassing Krahenbill, so the Court focuses on whether GCS's line of questioning stands to oppress Krahenbill or Midwest. The burden of demonstrating oppression lies with the movant. *Rivera v. Berg Elec. Corp.*, No. 2:08-CV-1176-PMP-LRL, 2010 WL 3002000, at *2 (D. Nev. July 28, 2010).

Midwest moves to terminate or limit Krahenbill's deposition because: (1) information on Midwest's contractors and clients is irrelevant; and (2) it will suffer a loss of its competitive edge if it had to provide GCS with its secret lists of contractors and clients.

To begin, the information is relevant. Discovery is relevant if it "bears on, or . . . reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). The relevant "issue" here is Count II, GCS's tortious interference claim. This requires GCS to prove, among other elements,

2

that Midwest's intentionally interfered with Luebbert's non-compete agreement, thereby inducing or causing Luebbert to breach.  *See Cent. Trust & Inv. Co. v. Signalpoint Asset Mgmt., LLC*, 422 S.W.3d 312, 324 (Mo. 2014) (unspooling the elements of a tortious interference claim).  If Midwest ends up divulging a previously undisclosed client that competes with GCS, and Midwest has dispatched Luebbert to work with that client, then Midwest may have induced Luebbert to breach his non-compete agreement.  Midwest's protests that it has no contracts itself with GCS and that it is not party to Luebbert's non-compete agreement are off point, because GCS's claim is for *interfering* with another's contract.  The client and contractor lists are relevant to instances of Midwest's alleged interference, so the Court finds this discovery relevant.

However, the plain language of Rule 30(d)(3) does not allow an attorney to limit or terminate a deposition simply because he thinks a question is irrelevant.  Fed. R. Civ. P. 30(d)(3); *see also* Fed. R. Civ. P. 30(c)(2) ("[T]he testimony is taken subject to any objection.").  The Court considers relevancy when determining whether compelled disclosure would unreasonably "oppress" Krahenbill or Midwest, but oppression, not relevancy, is the keystone here.

The bar for showing unreasonable oppression appears to be high.  To "oppress" is "to burden with harsh, rigorous impositions."  *Webster's New Twentieth Century Dictionary* 1256 (1979).  Rule 30(d)(3)(B) termination orders have been granted where the deponent was insistently questioned on privileged matters, and where the deponent was in frail physical condition and the deposition had already lasted nineteen days.  8A Charles A. Wright et al., *Federal Practice and Procedure* §§ 2116 (3d ed. 2010) (collecting cases); *see also id.* § 2113 & n.19 (collecting cases concerning oppressive behavior in depositions in general).  Another court

3

has suggested that a Rule 30(d)(3)(B) order is appropriate for "sensitive or obnoxious" lines of questioning, like "personal or confidential matters, such as his or her medical history, sex life or financial condition." *Van Stelton v. Van Stelton*, No. C11-4045-MWB, 2013 WL 5574566, at *17 (N.D. Iowa Oct. 9, 2013). These guideposts comport with the general rule that "[t]he federal discovery rules were designed to provide each party with the fullest pre-trial knowledge of the facts and to clarify and narrow the issues to be tried." *Nutt v. Black Hills Stage Lines, Inc.*, 452 F.2d 480, 483 (8th Cir. 1971).

The Court respects that Midwest is being asked to give its proprietary information to GCS, a competitor. The Court also appreciates that this information would divulge the confidential, proprietary information of non-parties.[1] Although this information is not quite as sensitive as a person's medical history, the loss of competitive edge that might result from its disclosure could well be a "harsh, rigorous imposition[]." *Webster's New Twentieth Century Dictionary*, *supra*, at 1256.

But, this information is relevant. And GCS is apparently unable to obtain it in any other way, notwithstanding Krahenbill's willingness to testify in a conclusory fashion that Midwest has not used Luebbert to perform work for any GCS competitor.

Further, the Court can place limits on Krahenbill's deposition. *See* Fed. R. Civ. P. 30(d)(3)(B) (permitting the court to limit the scope of the resumed deposition with Rule 26(c) protective orders). Several other courts have held that an "attorneys' eyes only" designation will adequately protect the confidentiality of customer and supplier lists. *E.g.*, *Nutratech, Inc. v. Syntech (SSPF) Int'l, Inc.*, 242 F.R.D. 552 (C.D. Cal. 2007); *Drexel Heritage Furnishings, Inc. v. Furniture USA, Inc.*, 200 F.R.D. 255, 259–62 (M.D.N.C. 2001); *cf. Coca-Cola Bottling Co. of*

---

[1] What the Court does not accept is Midwest's unsubstantiated allegation that GCS has asked for this discovery in bad faith, in furtherance of "a campaign to poison Midwest's relationship with those customers as well—regardless of whether Luebbert has performed any work for these customers" (Doc. 41 at 4).

*Shreveport v. Coca-Cola Co.*, 107 F.R.D. 288, 300 (D. Del. 1985) (ordering disclosure of the highly classified Coke formula under an attorneys'-eyes-only provision). Such an order here will "strike a proper balance between the philosophy of full disclosure of relevant information and the need for reasonable protection against harmful side effects, such as the risk that disclosure will result in competitive harm." *Nutratech*, 242 F.R.D. at 555 (internal quotation marks omitted).

On balance, the Court finds that with an "attorneys' eyes only" designation on Midwest's customer and client lists, Krahenbill and Midwest will not suffer any *unreasonable* oppression. *See* Fed. R. Civ. P. 30(d)(3)(A). The deposition shall resume. Midwest's motion is DENIED.

It is therefore ORDERED that the parties and Krahenbill shall resume his deposition. Pursuant to Rule 26(c)(1)(E) and (G), the Court supplements its previous Protective Order. The only people that can attend Krahenbill's deposition are: one or two attorneys for GCS; Krahenbill; and any other person(s) of Midwest's choosing. Krahenbill shall answer questions regarding the identity of Midwest's customers, competitors, and contractors. This information shall be designated as "Confidential – Attorneys' Eyes Only." Disclosure of such information shall be limited to the people designated in Paragraphs 5(b), (e), (f), (g), (h) of the Protective Order (Doc. 29). If Krahenbill provides information at his deposition besides the identity of Midwest's customers, competitors, and contractors, such information will not be treated as "Confidential – Attorneys' Eyes Only." All other provisions of the Protective Order apply to "Confidential – Attorneys' Eyes Only" material equally as they do to "Confidential" information.

## Conclusion

For the reasons above, Midwest's motion to limit or terminate Brandon Krahenbill's deposition (Doc. 41) is DENIED. Krahenbill's deposition shall resume in a manner consistent with this Order.

**IT IS SO ORDERED.**

Date:  February 27, 2015           /s/ Greg Kays
                                                 GREG KAYS, CHIEF JUDGE
                                                 UNITED STATES DISTRICT COURT