IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-657-DGK |
| | ) | |
| DEREK LUEBBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR
LEAVE TO AMEND ITS COMPLAINT**

This case arises out of a soured business relationship between Plaintiff Global Control Systems, Inc. ("GCS") and its former employee, Defendant Derek Luebbert ("Luebbert"). Around the time he left GCS's employ, Luebbert founded his own company, Defendant Atlas Industrial Solutions LLC ("Atlas"), and began soliciting work from a GCS client, Defendant Alliant Techsystems Inc. ("ATK"). GCS is now suing Defendants for various business torts.

Now before the Court is GCS's motion for leave to file an amended complaint (Doc. 107). The motion is GRANTED IN PART. The Court finds that allowing GCS to add claims of tortious interference with contract and conspiracy to commit tortious interference would be futile, and so denies GCS's motion to amend to add Prospective Counts III and VIII. However, GCS may file an amended complaint adding a claim for civil conspiracy to breach a contract.

**Background**

In the complaint that has been operative since removal, GCS alleges that Luebbert started his own business, Atlas, and began working at ATK, a former GCS customer. Luebbert and Atlas worked directly for ATK under Purchase Order D37395. GCS accused Luebbert of violating his non-compete agreement. The parties settled this dispute by signing a series of

agreements ("the Luebbert/Atlas-GCS contracts") under which Luebbert and Atlas agreed to pay GCS fifty percent of the revenue they generated off "alterations to the original purchase order," meaning Purchase Order D37395.  None of the Luebbert/Atlas-GCS contracts address Defendant Midwest Controls LLC ("Midwest"), a GCS competitor, who now allegedly works with Luebbert.  ATK also agreed to issue two-party checks to Atlas and GCS to facilitate Luebbert's and Atlas's continued work at ATK.

The complaint further alleges that although ATK issued new purchase orders to Luebbert and Atlas which fall under the scope of the original purchase order, neither Luebbert nor Atlas have paid GCS fifty percent of the revenue they generated off these alterations.  The complaint also alleges that Luebbert and Atlas have begun working at ATK indirectly, through Midwest.

As GCS seeks to amend its complaint past the deadline to do so, some background on the scheduling deadlines is warranted.  Once Defendants removed the case, the Court set the deadline to file motions to amend the pleadings as December 10, 2014, and the deadline to complete discovery as July 6, 2015.  GCS diligently prosecuted this case under the scheduling order.  It engaged in significant discovery before filing this motion, as evidenced by: (1) ATK's production of over 80,000 pages of discovery materials; (2) its participation in a two-day preliminary injunction hearing during which it interrogated Luebbert; and (3) four discovery disputes: on December 17, 2014, February 27, 2015, June 1, 2015, and September 4, 2015.

GCS began deposing Midwest's president, Brandon Krahenbill ("Krahenbill"), on December 17, 2014.  During that deposition, GCS's counsel asked Krahenbill to identify Midwest's customers in Kansas City.  Krahenbill refused to answer on the advice of counsel and suspended the deposition.  Midwest later moved to limit or terminate the deposition.  The Court denied the motion and ordered Krahenbill to resume his deposition.

GCS and Midwest had trouble rescheduling Krahenbill's deposition; Krahenbill was out of the country for a month, then Midwest did not produce previously requested discovery documents, then GCS's counsel had a death in the family. Finally, GCS resumed Krahenbill's deposition on August 13, 2015.

GCS had always suspected that Luebbert and Atlas worked at ATK through Midwest. During his resumed deposition, Krahenbill testified that ATK specifically requested that Midwest use Luebbert to provide services to ATK, and that ATK instructed Midwest to submit an invoice for services Luebbert performed for ATK before Midwest had even been approved to be onsite at ATK or received any purchase orders. This information was apparently new to GCS; previously, ATK's witnesses had denied knowing the details of the relationship between Midwest and Luebbert.

About five weeks later, on September 22, 2015, GCS moved to amend its complaint. GCS seeks to add three new claims, all arising from Krahenbill's testimony that when ATK began issuing work to Midwest, it did so with the knowledge and purpose that it would help Luebbert and Atlas evade their contractual obligations. As GCS describes this alleged scheme: "Luebbert would work at ATK under Midwest; invoice Midwest for his work; Midwest would invoice ATK and ATK would pay Midwest; and from ATK's payment, Midwest would pay Luebbert 100% of what Luebbert had billed Midwest and Midwest had billed to ATK for his time." (Doc. 107 at 3). This, GCS contends, is newly discovered information that supports three new claims: Prospective Count III, against ATK for tortious interference with a contract; Prospective Count VII, against all Defendants for civil conspiracy to breach a contract; and Prospective Count VIII, against all Defendants for civil conspiracy to tortiously interfere with a contract.

3

**Discussion**

GCS moves for leave to file an amended complaint. "There is no absolute right to amend after the deadline for amendment in a scheduling order . . . ." *Trim Fit, LLC v. Dickey*, 607 F.3d 528, 531 (8th Cir. 2010). At that time, the party seeking to amend must surmount two hurdles. *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 715–16 (8th Cir. 2008). Under Federal Rule of Civil Procedure 15(a)(2), the party can be denied leave to amend if its proposed amendment fails to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 15(a)(2). Under Rule 16(b)(4), the party must demonstrate that it attempted to diligently meet the expired deadline. *See* Fed. R. Civ. P. 16(b)(4). The Court addresses in turn each Rule's applicability to this motion.

**I. GCS's proposed amended complaint would be futile in part under Rule 15, because Prospective Counts III and VIII fail to state a claim.**

Under Rule 15, a party in GCS's posture may not amend its complaint without leave of court. *See* Fed. R. Civ. P. 15(a)(2). Although the "court should freely give leave when justice so requires," *id.*, justice does not require leave where "there exists undue delay, bad faith, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 922 (8th Cir. 2015). An amended complaint is futile if it could not withstand a Rule 12 motion to dismiss. *In re Senior Cottages of Am., LLC*, 482 F.3d 997, 1001 (8th Cir. 2007).

Defendants argue that GCS's amendment is futile because it does not state new claims upon which relief can be granted—meaning the proposed amended complaint does not contain sufficient facts, taken as true, to state plausible new claims for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court assesses each of GCS's three new, prospective claims in this light.

### A. Because Prospective Count III does not plead that ATK lacked justification to interfere with the Luebbert/Atlas-GCS contracts, that count does not state a claim.

In Prospective Count III, GCS alleges that ATK employed Luebbert and Atlas through Midwest instead of employing them directly, thereby allowing Luebbert and Atlas to keep commissions and shirk their contractual obligations to GCS. This, GCS contends, constitutes tortious interference with a contract.

One of the elements of tortious interference with contractual relations is the "absence of justification" to interfere with the plaintiff's contract. *W. Blue Print Co. v. Roberts*, 367 S.W.3d 7, 19 (Mo. 2012). "Absence of justification refers to the absence of a legal right to justify actions taken." *Id.* at 20. "If the defendant has a legitimate interest, economic or otherwise, in the contract . . . sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 317 (Mo. 1993). "In the context of this tort, improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.*

Here, the proposed amended complaint establishes that Luebbert and Atlas were subject to sharing revenue with GCS only if they worked at ATK under the original purchase order. This arrangement incentivized Luebbert and Atlas to work at ATK under another firm's purchase order, so they would not have to share revenues with GCS. Thus, ATK had an economic interest in the Luebbert/Atlas-GCS contracts. *See id.*

However, the proposed amended complaint fails to demonstrate that ATK employed independently wrongful means to induce Luebbert and Atlas to breach their contract and evade the revenue-sharing provision. The proposed amended complaint does not allege that ATK committed any independently wrongful act, such as misrepresentation of fact or restraint of

5

trade. *See id.*; *cf. Coonis v. Rogers*, 429 S.W.2d 709, 713–16 (Mo. 1968) (finding an absence of justification where the counterclaimed plaintiff induced the defendant's customers to cancel their contracts by violating a restraining order and maliciously placing sugar in the defendant's gas tank to annoy and confuse the defendant's customers).[1]

At most, ATK altered its ordinary business practices by issuing a purchase order to Midwest instead of to Luebbert or Atlas. To be sure, ATK allegedly did so to circumvent the Luebbert/Atlas-GCS contracts and thus, indirectly, undermine GCS. But issuing purchase orders to one contractor over another is simply a business decision that, at least as far as GCS has argued, would not be actionable in and of itself. *See Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 373 (Mo. 1990) ("The mere fact that defendant's conduct may have had a negative effect on plaintiffs' business expectancies does not, *a fortiori*, establish an absence of justification."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W.2d 737, 743 (Mo. Ct. App. 1984) ("[The defendant] blatantly disregarded the bidding documents and conducted private negotiations, unknown to any of its competitors[;] these acts, while perhaps unsporting, do not rise to the level of wrongfulness."). There is no absence of justification, so Prospective Count III fails to state a claim. *See W. Blue Print Co.*, 367 S.W.3d at 19.[2]

---

[1] Late in its reply brief, GCS argues that ATK committed factual misrepresentation: "Instructing Midwest to invoice ATK for work performed by Luebbert/Atlas then paying Midwest for that same work was a factual misrepresentation. It was a lie. It was wrongful." (Doc. 122 at 10). This does not count as an unjustifiable action because the proposed amended complaint does not establish that ATK ever made a factual misrepresentation to GCS.

[2] As discussed below, the proposed amended complaint does state a claim for conspiracy to breach a contract. At first glance, that misdoing might seem to supply the absence of justification to tortiously interfere with a contract. However, "[t]he mere fact that a breach of contract resulted does not, *ipso facto*, indicate that the means used to induce the breach were illegal or tortious." *Lick Creek Sewer Sys., Inc. v. Bank of Bourbon*, 747 S.W.2d 317, 322–23 (Mo. Ct. App. 1988); *see also Schott v. Beussink*, 950 S.W.2d 621, 627–29 (Mo. Ct. App. 1997) (Russell, J.). Therefore, civil conspiracy to breach a contract is not an unjustifiable action as required here.

## B. Prospective Count VII states a claim because it pleads that Defendants had a meeting of the minds to conduct a conspiracy with an unlawful objective.

Prospective Count VII alleges that all Defendants civilly conspired to breach two separate agreements: ATK's agreement to make two-party payments to GCS and Luebbert, and the contract requiring Luebbert and Atlas to pay GCS fifty percent of all revenue they were paid by ATK for any alterations to the original purchase order.

To plead a civil conspiracy, GCS must show: "(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) [GCS] was thereby damaged." *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999).

Defendants argue that this count does not satisfy the second element, unlawful objective. "The term unlawful, as it relates to civil conspiracy, is not limited to conduct that is criminally liable, but rather may include individuals associating for the purpose of causing or inducing a breach of contract . . . ." *W. Blue Print Co.*, 367 S.W.3d at 22. The first alleged conspiracy goal, helping ATK dodge its two-party-check obligation, seeks what would be a breach of that contract. *See Kieffer v. Icaza*, 376 S.W.3d 653, 657 (Mo. 2012) (elements of breach of contract).

The second alleged goal was to violate Luebbert's and Atlas's agreements to pay GCS fifty percent of all revenue paid to them by ATK for any alterations to the original purchase order. Viewed most favorably toward GCS, these facts suggest that ATK's arrangement to pay Luebbert and Atlas through Midwest constitutes an unofficial "alteration" to the original purchase order. While this action is not independently wrongful, it does not need to be; civil conspiracy only requires *an* act, so long as it is performed in furtherance of the conspiracy. *See Oak Bluff Partners, Inc.*, 3 S.W.3d at 781. Therefore, Luebbert and Atlas might be breaching the Amendment by failing to pay GCS for revenue generated off this work. *See Kieffer*, 376 S.W.3d

7

at 657.  Because each conspiracy's objective was to breach a contract, each objective is unlawful.  *See W. Blue Print Co.*, 367 S.W.3d at 22.

Defendants next argue Prospective Count VII does not plead a meeting of the minds, because the proposed amended complaint fails to allege that ATK had a copy of any of the Luebbert/Atlas-GCS contracts before committing its alleged conspiratorial acts.  "Without knowledge of the actual terms of Luebbert's agreements, ATK could not have reached a meeting of the minds with him to breach the terms of those agreement."  ATK Br. at 14 (Doc. 112 at 19).

To establish a meeting of the minds, a plaintiff must show only that each participant acted with "a unity of purpose or a common design and understanding."  *Oak Bluff Partners, Inc.*, 3 S.W.3d at 781.  Here, Prospective Count VII demonstrates that ATK knew of the contracts from their inception, as ATK agreed to issue two-party checks under them.  Then, ATK began evasively accepting bids from Luebbert via Midwest instead of via Atlas.  These allegations provide enough circumstantial evidence for the Court to infer at the Rule 12(b)(6) stage that all Defendants knew that Luebbert and Atlas were trying to breach their contracts, yet abetted them anyway.  These allegations also permit the Court to conclude that Defendants had a meeting of the minds with Luebbert and Atlas to stop issuing two-party checks.  Therefore, the proposed amended complaint states a claim for civil conspiracy to breach contracts.  *See W. Blue Print Co.*, 367 S.W.3d at 22.

### C. Because Prospective Count VIII is not based on a valid substantive count, it does not state a claim.

Finally, Prospective Count VIII alleges that all Defendants conspired to tortiously interfere with the Luebbert/Atlas-GCS contracts.  "[I]f tortious acts alleged as elements of a civil conspiracy claim fail to state a cause of action, then the conspiracy claim fails as well."  *Oak Bluff Partners, Inc.*, 3 S.W.3d at 781.

Here, the proposed amended complaint fails to state a claim for tortious interference with contract. Therefore, the conspiracy claim fails as well. *See id.* Allowing GCS to amend its complaint to add Prospective Count VIII would be futile.

To summarize, the Court finds it would be futile to grant GCS leave to present Prospective Counts III and VIII. *See In re Senior Cottages of Am., LLC*, 482 F.3d at 1001. Therefore, Rule 15 counsels against granting GCS this leave. *See Julianello*, 791 F.3d at 922; Fed. R. Civ. P. 15(a)(2). However, adding Prospective Count VII would not be a futile effort for GCS. Thus, the Court must determine whether Rule 16 favors granting GCS leave to amend to add this single claim.

## II. GCS is granted leave under Rule 16 to add Prospective Count VII because it was diligent in attempting to meet the scheduling deadline and because Defendants face minimal prejudice.

Under Rule 16, if "a party files for leave to amend outside of the court's scheduling order," as here, "the party *must* show cause to modify the schedule." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008); *see* Fed. R. Civ. P. 16(b)(4) ("A schedule may be modified only for good cause and with the judge's consent."). "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements," though any "prejudice to the nonmovant resulting from modification of the scheduling order may also be a relevant factor." *Sherman*, 532 F.3d at 716–17. Diligence is absent where there has been "no change in the law, no newly discovered facts, or any other changed circumstance." *Id.* at 718.

Although GCS filed its motion nine months after the deadline to file a motion to amend its complaint, the Court finds that GCS acted diligently to meet that deadline with regard to its civil conspiracy claim.

First, over those nine months, GCS conducted significant discovery, as exemplified by the four discovery disputes that necessitated judicial intervention. GCS extensively questioned

9

Case 4:14-cv-00657-DGK   Document 136   Filed 01/15/16   Page 9 of 12

witnesses over seven hours of a preliminary injunction hearing.  As the record shows, GCS served several requests for production and sets of interrogatories throughout the discovery period.  *Cf. Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006) (affirming a denial of leave where the plaintiff, "[r]ather than focusing on amending his complaint or completing discovery, . . . spent most of his time filing frivolous motions").

Second, GCS did not conclusively learn the allegations necessary to form its newfound conspiracy claim until it finished the Krahenbill deposition on August 13, 2015—five weeks before it filed its motion.  Although GCS may have been able to piece together information sufficient to bring that claim from the 80,000 pages of records produced by ATK alone, the fact that many of Defendants' witnesses, including ATK's corporate representative, denied knowledge about the relationships among ATK, Midwest, Luebbert and Atlas weighs against finding GCS had the necessary information earlier.  *E.g.* Dep. of David Hodges at 83–85 (Doc. 107-2); *see Simpson v. Home Depot, Inc.*, 203 F.R.D. 643, 644–45 (D. Kan. 2001) (granting leave to amend where the plaintiff had been attempting to obtain information relevant to his newfound claims through formal discovery for several months).

Then, on August 13, Krahenbill testified that ATK specifically requested that Midwest use Luebbert to provide services to ATK and even instructed Midwest to submit an invoice for services Luebbert performed for ATK before Midwest had even been approved to be onsite at AKT or received any purchase orders.  Once GCS learned this information, it diligently moved to amend its complaint to add the conspiracy claim.  Thus, its failure to move prior to this time was not lack of diligence—it merely waited until it had plausible evidence to support such a claim.  *See Aventis Pharma S.A. v. Hospira, Inc.*, 675 F.3d 1324, 1333 (Fed. Cir. 2012) (affirming a grant of leave where a plaintiff-patent holder moved to amend shortly after deposing

an inventor who disclosed information pertinent to the new claims); *cf. Barstad v. Murray Cnty.*, 420 F.3d 880, 883 (8th Cir. 2005) (affirming a denial of leave where the plaintiffs "knew of the claims they sought to add when they filed the original complaint").[3]

The key information here is not that Luebbert was working at ATK through Midwest; it was that Defendants, in pursuing that work arrangement, allegedly conspired, and undertook steps in furtherance of that conspiracy, to facilitate Luebbert, Atlas, and ATK in their breaches. GCS did not previously know the full extent of the Luebbert/Atlas-Midwest relationship. Therefore, GCS was not necessarily on notice about its conspiracy claim just because Luebbert testified early on that he was working at ATK via Midwest, or that GCS's owner knew that Luebbert was working at ATK via Midwest, or because ATK produced almost 80,000 pages of documents to GCS. GCS became on notice during Krahenbill's deposition when he testified to information new to GCS.

Third, the Court gives some weight to the fact that it has not previously granted GCS an extension of the deadline to amend its pleadings. *Cf. Alholm v. Am. S.S. Co.*, 167 F.R.D. 75, 77–78 (D. Minn. 1996) (denying leave where the plaintiff had created a "substantial delay" and had "fail[ed] to take advantage of the three prior occasions when he was granted extensions in which his Complaint could be amended").

On balance, the Court finds that GCS was diligent in attempting to meet the Court's deadline for filing motions for leave to amend the pleadings.[4]

---

[3] The Court rejects Defendants' complaint that GCS "failed to take the deposition of Midwest's corporate representative earlier in the case." A party has no obligation to conduct discovery in any particular order, as long as it completes discovery within the timeframe set by the scheduling order. Fed. R. Civ. P. 26(d)(2)(A), 16(b). GCS did attempt to depose Krahenbill back in December 2014, a mere seven days after the deadline to move to amend the pleadings, but could not finish the deposition after a legal disagreement arose between counsel. Further, Krahenbill's deposition was rescheduled at least twice for matters outside GCS's control: Krahenbill's imminent departure from the country, and a death in the family of GCS's counsel.

[4] Because diligence is assessed against the particular deadline at issue, Defendants' arguments about GCS's "general lack of diligence in pursuing this case" are inapposite. *See Sherman*, 532 F.3d at 716.

Further, the Court finds that amending the complaint will not cause Defendants prejudice, "because the claim[] which the plaintiff seeks to add, while technically [a] separate cause[] of action, [is] related to the core allegations in the case." *Burns ex rel. Office of Public Guardian v. Hall & Dorr LLP*, 242 F.R.D. 170, 174 (D. Mass. 2007). Thus, no additional discovery is necessary. To avert the disadvantage of Defendants being unable to file a summary judgment motion on GCS's new claim, the Court will permit Defendants to file such a motion in accordance with the briefing schedule outlined below.

The Court finds good cause to allow a late amendment to GCS's complaint. *See Sherman*, 532 F.3d at 716–17; Fed. R. Civ. P. 15(a)(2), 16(b)(4). Its motion is granted.

## Conclusion

In view of the foregoing, GCS's motion for leave to file an amended complaint (Doc. 107) is GRANTED.

No later than January 22, 2016, GCS must file its proposed First Amended Complaint (Doc. 107-1), including any exhibits, except that GCS must remove the substance of Prospective Counts III and VIII.

No later than January 29, 2016, Defendants may file a motion for summary judgment on GCS's new civil conspiracy to breach contract claim. Within seven days of when Defendants file such a motion, GCS must file suggestions in opposition. Within five days of when GCS does so, Defendants may file reply suggestions. The pretrial teleconference and trial remain set for March 21, 2016, and March 29, 2016, respectively.

**IT IS SO ORDERED.**

Date:  January 15, 2016   /s/ Greg Kays
                          GREG KAYS, CHIEF JUDGE
                          UNITED STATES DISTRICT COURT