# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     No. 4:14-CV-657-DGK |
| | ) |
| DEREK LUEBBERT, et al., | ) |
| | ) |
|     Defendants. | ) |

## ORDER GRANTING IN PART LUEBBERT, ATLAS, AND MIDWEST'S MOTION FOR SUMMARY JUDGMENT

This case arises out of a soured business relationship between Plaintiff Global Control Systems, Inc. ("GCS") and its former employee, Defendant Derek Luebbert ("Luebbert"). Before he left GCS, Luebbert founded his own company, Defendant Atlas Industrial Solutions LLC ("Atlas"), and began soliciting work from a GCS client, Defendant Alliant Techsystems Inc. ("ATK"). He has also worked with Defendant Midwest Controls, LLC ("Midwest"), a competitor to GCS.

Now before the Court is a motion for summary judgment filed by Luebbert, Atlas, and Midwest (Doc. 110). Because Midwest has shown that there is no dispute of material fact and it is entitled to judgment as a matter of law on Count II, the motion is GRANTED IN PART.

## Background[1]

In August 2006, Luebbert began working for GCS as a controls engineer. GCS assigned Luebbert to work at ATK as GCS's representative. As a condition of his employment, Luebbert

---

[1] The parties vigorously contest which facts are relevant and what inferences from those facts are reasonable. This section omits facts properly controverted by GCS, immaterial facts, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could draw different inferences from these facts, the Court must here state the facts in the light most favorable to GCS as the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

signed a contract of employment ("the Employment Agreement"). The Employment Agreement contains a non-compete provision, which states in pertinent part:

> Derek [Luebbert] agrees and covenants that for a period of 3 year(s) following the termination of this Agreement, whether such termination is voluntary or involuntary, Derek [Luebbert] will not directly or indirectly engage in any business competitive with GCS or work directly or indirectly for GCS customers. This covenant shall apply to the geographical area that includes the area within a 100-mile radius of Lenexa, KS.

(Doc. 120-6 at 3).

After founding a company called Atlas, Luebbert resigned from GCS in May 2010. He began providing project management services as Atlas for ATK under Purchase Order D37395.

Once GCS learned that Luebbert was working for ATK, it sought to enforce Luebbert's non-compete provision. GCS, Atlas, and Luebbert subsequently entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") on June 17, 2010 (Doc. 111-3). The Settlement Agreement suspended the Employment Agreement's non-compete clause for six months or until Luebbert completed Purchase Order D37395, whichever came first. After the suspension ended, the non-compete agreement would last for another three years.

After the Settlement Agreement went into effect, GCS, Luebbert, and Atlas signed an Amendment to the Settlement Agreement on January 28, 2011 ("the Amendment") (Doc. 111-6). The Amendment did four key things. First, Luebbert and Atlas agreed to pay GCS fifty percent of all revenue, except non-travel expense markups, paid by ATK to Luebbert or Atlas for work on any alterations to Purchase Order D37395. Second, the Amendment extended the suspension of the non-compete agreement "until the work by ATLAS or LUEBBERT at ATK has concluded." Third, the Amendment obligated Luebbert and Atlas to "require ATK to make all payments by two-party checks made payable to GCS and Atlas." Fourth, Atlas agreed to provide

2

GCS access to its accounting records "for the purpose of inspecting or otherwise verifying accounting related activities."

At some point, Atlas stopped invoicing ATK for Purchase Order D37395. Atlas began working at ATK not under its own name, but as a contractor for Midwest. In March 2014, ATK issued a purchase order to Midwest for Atlas's services, Purchase Order E55686. Luebbert and Atlas worked under that purchase order until 2015.

## Standard

A moving party is entitled to summary judgment on a claim or defense if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## Discussion

Luebbert and Atlas move for summary judgment on Count I, breach of contract. Midwest moves for summary judgment on Count II, tortious interference with contract.[2]

### I. The non-compete clause is enforceable as a matter of law.

In Count I, GCS alleges that Luebbert and Atlas breached the Employment Agreement, Settlement Agreement, and Amendment in several ways, by failing to: (1) pay GCS all of the revenue it was due under Purchase Order D37395; (2) provide an accounting; (3) obtain two-

---

[2] Defendants move for summary judgment on a third count, civil conspiracy to breach contract (Count VI), in a separate, unripe motion (Doc. 140).

party checks from ATK; and (4) observe the non-compete provisions of the Employment Agreement, which the Amendment returned to effect once Luebbert and Atlas finished their work on Purchase Order D37395. Luebbert and Atlas respond that these contracts are overly restrictive non-compete agreements, and thus unenforceable.

As part of a breach of contract claim, the plaintiff must establish "the existence and terms of a contract." *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). Missouri law strictly construes non-compete agreements, recognizing one as valid only if it: (1) protects the employer's trade secrets or customer contacts; and (2) is reasonable in scope. *Whelan Sec. Co. v. Kennebrew*, 379 S.W.3d 835, 841–42 (Mo. 2012). The validity of a non-compete agreement, including its reasonableness, is a question of law. *Mills v. Murray*, 472 S.W.2d 6, 11 (Mo. Ct. App. 1971).

The first three provisions GCS seeks to enforce—the revenue-sharing, accounting, and two-party-checks provisions—are not non-compete agreements. They do not restrict, in any way, Luebbert's or Atlas's right to compete with GCS or to solicit GCS customers. *See Whelan*, 379 S.W.3d at 841 n.2 (defining a "non-compete agreement" to mean "all restrictive covenants entered into between the employer and employees that restrict the post-employment activities of the employees, including non-competition and non-solicitation clauses"). Even while burdened with these provisions, Luebbert and Atlas may engage in whatever type of business they please, for whomever they please, in the same market as GCS.

The Court finds that the fourth contractual provision GCS seeks to enforce—the one prohibiting Luebbert from "directly or indirectly engag[ing] in any business competitive with GCS or work[ing] directly or indirectly for GCS customers"—qualifies as a non-compete

4

agreement. *See id.* at 841–42. The issue then is whether this provision satisfies the heightened standard applicable to non-compete agreements.

The Court finds it does. First, the Employment Agreement protects GCS's customer contacts. Although it was unsuccessful at doing so, the Employment Agreement aimed to preserve GCS's relationship with ATK, with whom Luebbert frequently and intensively dealt.

Second, the Employment Agreement is reasonable in scope. A non-compete agreement is reasonable if it is "no more restrictive than is necessary to protect the legitimate interests of the employer." *Id.* at 842. In determining reasonableness, a court must examine all of the agreement's terms, including its temporal and geographic dimensions. *Id.*

Here, Luebbert does not really challenge the time and geographic limitations imposed by non-compete clause. At most, he argues that GCS is restricting his ability to work while simultaneously extorting money damages. He argues that he has been subject to the non-compete clause for five years after he left GCS, and then will be subject, per the Amendment, to that clause for three more years after he finishes work at ATK. He argues that this extends the non-compete agreement to an untenable length of eight or more years. However, the Settlement Agreement and Amendment, by their terms, *suspended* the non-compete while Luebbert and Atlas worked at ATK under Purchase Order D37395. Therefore, the non-compete agreement will ultimately last about three years, a length of time that many courts have found to be reasonable under Missouri law. *See, e.g.*, *Mills*, 472 S.W.2d at 11–12, *cited with approval in Whelan*, 379 S.W.3d at 842; *Church Mut. Ins. Co. v. Sands*, No. 14-CV-3119-S-DGK, 2014 WL 3385208, at *3 (W.D. Mo. July 9, 2014). For these reasons, the Employment Agreement is a valid non-compete agreement.

Finally, Luebbert and Atlas argue that the Settlement Agreement and Amendment are not supported by sufficient consideration. *See Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014) (requiring consideration for a contract to be valid). They acknowledge that consideration was exchanged at the inception of the Settlement Agreement, but argue that changed circumstances have given GCS a windfall and so the original consideration is no longer "fair." This concession is dispositive. "[C]onsideration must be measured at the time the parties enter into their contract," not at some later time. *Weinstein v. KLT Telecom, Inc.*, 225 S.W.3d 413, 415–16 (Mo. 2007). Sufficient consideration upholds the contracts here, even though the economic benefits conferred to Luebbert and Atlas have diminished in value since the contracts were originally executed. *See id.*

The Employment Agreement, Settlement Agreement, and Amendment are valid contracts, even considering their non-compete provisions. Because Luebbert and Atlas are not entitled to judgement as a matter of law on this claim, the Court denies summary judgment on Count I.

## II. Because Midwest was justified in its actions, it is entitled to summary judgment on the tortious interference with contract claim.

In Count II, GCS alleges that Midwest should have known that Luebbert and Atlas were subject to a contract that regulated how they were paid for their work at ATK. By employing them directly to do the same work they did under Purchase Order D37395, Midwest supposedly allowed Luebbert and Atlas to keep their commissions and shirk their obligations to GCS under the Settlement Agreement and Amendment. This, GCS contends, constitutes tortious interference with a contract.

One of the elements of tortious interference with contractual relations is the "absence of justification" to interfere with the plaintiff's contract. *W. Blue Print Co. v. Roberts*, 367 S.W.3d

7, 19 (Mo. 2012). "Absence of justification refers to the absence of a legal right to justify actions taken." *Id.* at 20. "If the defendant has a legitimate interest, economic or otherwise, in the contract . . . sought to be protected, then the plaintiff must show that the defendant employed improper means in seeking to further only his own interests." *Nazeri v. Mo. Valley Coll.*, 860 S.W.2d 303, 317 (Mo. 1993). "In the context of this tort, improper means are those that are independently wrongful, such as threats, violence, trespass, defamation, misrepresentation of fact, restraint of trade, or any other wrongful act recognized by statute or the common law." *Id.*

Here, nothing in the record shows that Midwest employed independently wrongful means to induce Luebbert and Atlas to breach their contract and evade the revenue-sharing provision. GCS fails to place any evidence in the record suggesting that Midwest committed any independently wrongful act, such as misrepresentation of fact or restraint of trade. *See id.*; *cf. Coonis v. Rogers*, 429 S.W.2d 709, 713–16 (Mo. 1968) (finding an absence of justification where the counterclaimed plaintiff induced the defendant's customers to cancel their contracts by violating a restraining order and maliciously placing sugar in the defendant's gas tank to annoy and confuse the defendant's customers).

At most, Midwest was competing with GCS: using the latter's former personnel in a way that, at least as far as GCS has argued, would not be actionable in and of itself. *See Cmty. Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n*, 796 S.W.2d 369, 373 (Mo. 1990) ("The mere fact that defendant's conduct may have had a negative effect on plaintiffs' business expectancies does not, *a fortiori*, establish an absence of justification."); *Briner Elec. Co. v. Sachs Elec. Co.*, 680 S.W.2d 737, 743 (Mo. Ct. App. 1984) ("[The defendant] blatantly disregarded the bidding documents and conducted private negotiations, unknown to any of its competitors[;] these acts, while perhaps unsporting, do not rise to the level of wrongfulness."). No reasonable jury could

7
Case 4:14-cv-00657-DGK   Document 146   Filed 02/08/16   Page 7 of 8

find an absence of justification on this evidence, so the Court must grant summary judgment to Midwest on Count II.  *See W. Blue Print Co.*, 367 S.W.3d at 19.

## Conclusion

In view of the foregoing, Luebbert, Atlas, and Midwest's motion for summary judgment (Doc. 110) is GRANTED IN PART.  Judgment is granted to Midwest on Count II of the First Amended Complaint.

**IT IS SO ORDERED.**

Date:  February 8, 2016   /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT