IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-657-DGK |
| | ) | |
| DEREK LUEBBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING IN PART ATK'S MOTION FOR SUMMARY JUDGMENT**

This case arises out of a soured business relationship between Plaintiff Global Control Systems, Inc. ("GCS"), and its former employee, Defendant Derek Luebbert ("Luebbert"). Before he left GCS, Luebbert founded his own company, Defendant Atlas Industrial Solutions LLC ("Atlas"), and began soliciting work from a GCS client, Defendant Alliant Techsystems Inc. ("ATK"). He has also worked with Defendant Midwest Controls, LLC ("Midwest"), a competitor to GCS.

Now before the Court are ATK's motion for summary judgment (Doc. 108) and GCS's motion to strike some of ATK's affidavits (Doc. 117). For the reasons below, GCS's motion is DENIED and ATK's motion is GRANTED IN PART. Summary judgment is granted to ATK on Count IV, and Counts III and V are limited to Purchase Order D37395.

**Background[1]**

In August 2006, Luebbert began working for GCS as a controls engineer. GCS assigned Luebbert to work as its representative at ATK's Lake City Army Ammunition Plant. As a

---

[1] The parties vigorously contest which facts are relevant and what inferences from those facts are reasonable. This section omits facts properly controverted by GCS, immaterial facts, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could draw different inferences from these facts, the Court must here state the facts in the light most favorable to GCS as the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

condition of his employment, Luebbert signed a contract of employment ("the Employment Agreement") which contained a non-compete clause.

After founding a company called Atlas, Luebbert resigned from GCS in May 2010. He began providing project management services as Atlas for ATK under Purchase Order D37395.

Once GCS learned that Luebbert was working for ATK, it sought to enforce Luebbert's non-compete provision. Instead of litigating that dispute, GCS, Atlas, and Luebbert entered into a Settlement Agreement and Mutual Release ("Settlement Agreement") on June 17, 2010. Generally, the Settlement Agreement suspended the non-compete clause so that Luebbert could work at ATK, on the condition that he paid GCS part of the money he received on Purchase Order D37395.

On June 16, 2010—the day before the Settlement Agreement was signed—GCS's president and owner, Manuel David ("David"), emailed Terry Abney ("Abney"), who writes orders for contractors at ATK. David's email told Abney that GCS had "asked Mr. Luebbert to execute a promissory note to GCS backed by an assignment of his rights and interest under the purchase order P.O. No. D37395." (Doc. 109-7). He asked ATK to "issue two-party checks under the P.O. so that [GCS] can reach a settlement with Mr. Luebbert." (*Id.*)

Abney never responded to David. Yet the next day, Abney asked Luebbert about this proposal; Luebbert said he had no objection. Luebbert sent at least two more emails to Abney regarding two-party checks. Luebbert's attorney at the time and GCS were included in at least two emails. There were several other communications between GCS and ATK related to the dispute with Luebbert and its resolution. ATK did not, however, ever see a copy of the Settlement Agreement before it was signed.

Based on these communications, on September 8, 2010, ATK issued Change Order #1 to Purchase Order D37395, which added the following language:

> ALTERATION NO. 1
> FOR THIS ORDER ONLY PAYMENT MUST BE MADE TO:
> ATLAS INDUSTRIAL SOLUTIONS/GLOBAL CONTROL SYSTEMS
>
> . . .
>
> ALL OTHER TERMS AND CONDITIONS OF THIS ORDER REMAIN UNCHANGED.

(Doc. 109-9 at 1). A week later, ATK began issuing two-party checks related to Purchase Order D37395 to Atlas and GCS.

In January 2011, GCS, Atlas, and Luebbert entered into an Amendment of the Settlement Agreement ("Amendment"), which provided in part:

> LUEBBERT and ATLAS agree to pay GCS fifty (50%) of all revenue, including travel expense markups, paid by Alliant Techsystems, Inc. ("ATK") to LUEBBERT and/or ATLAS for any alterations to the original purchase order, this Amendment is entered until LUEBBERT and ATLAS cease further work or other economically remunerative activities for ATK. . . . LUEBBERT and ATLAS shall require ATK to make all payments by two-party checks made payable to GCS and Atlas.

(Doc. 109-11). Under this Amendment, GCS and Luebbert apparently handled the checks as follows: the checks were mailed by ATK to Atlas; Luebbert would endorse the check and mail it to GCS; GCS would calculate the amount due to Atlas; and then GCS would send a separate check back to Atlas in that amount.

ATK ultimately issued six purchase orders to Atlas for Luebbert's services, although only Purchase Order D37395 required two-party checks. For two and a half years, ATK paid Atlas on invoices related to Purchase Order D37395 with two-party checks, except for non-travel expense markups. This changed in April 1, 2013, when Luebbert requested that ATK begin issuing checks to "just 'Atlas Industrial Solutions'" and that any recently issued checks with both names be cancelled and re-issued to Atlas as the single payee. ATK complied and switched to one-

3

party checks. Except for Atlas Invoice No. 54, ATK then paid Atlas with single-party checks, even for work performed under Purchase Order D37395. This apparently happened on seven Atlas invoices related to Purchase Order D37395: 57, 80, 81, 82, 83, 84, and 85.

## Standard

A moving party is entitled to summary judgment on a claim or defense if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court views the facts in the light most favorable to the nonmoving party and draws all reasonable inferences in its favor. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

## Discussion

### I. The Court denies GCS's motion to strike Hodges's and Smith's affidavits.

First, GCS moves to strike the affidavits of David Hodges ("Hodges") and Lawrence Smith ("Smith"). Hodges speaks generally about Luebbert's work at ATK. GCS argues that because Hodges's time of employment at ATK was not coextensive with Luebbert's, and because Hodges testified at his deposition that he learned some of his facts through other ATK engineers, his affidavit should be struck.

Smith swears to several facts about the purchase orders and invoices flowing between ATK and Atlas. GCS challenges his affidavit because he admitted having a "very limited" involvement in the process of issuing two-party checks to Atlas and GCS. Smith testified that

4

the only way he could answer questions about purchase orders and invoices would be to have ATK's files in front of him.

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed. R. Civ. P. 56(c)(4). "Where an affidavit does not meet this standard, it is subject to a motion to strike." *McSpadden v. Mullins*, 456 F.2d 428, 430 (8th Cir. 1972).

"Personal knowledge or perception acquired through review of records prepared in the ordinary course of business . . . is a sufficient foundation for lay opinion testimony." *Burlington N. R.R. Co. v. Nebraska*, 802 F.2d 994, 1004–05 (8th Cir. 1986). Thus, an affiant who gleans his information from reviewing his company's documents has personal knowledge of those documents, even if he did not personally participate in their creation. *See id.*; *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 592 (8th Cir. 2011) (applying *Burlington Northern* to affidavits in support of summary judgment). "Affidavits asserting personal knowledge must include enough factual support to show that the affiant possesses that knowledge." *El Deeb v. Univ. of Minn.*, 60 F.3d 423, 428 (8th Cir. 1995); *accord Brooks v. Tri-Systems, Inc.*, 425 F.3d 1109, 1111–12 (8th Cir. 2005) (permitting the court to "infer personal knowledge from the content or context of a statement in an affidavit").

Hodges's affidavit does not bear on any material facts, so the motion is moot as it regards him. As for Smith, his affidavit states that he is an ATK purchasing manager. He was ATK's corporate designee on these purchase transactions, and he testified at his deposition about the purchase transactions covered in his affidavit. His affidavit discusses at length the contents of six purchase orders issued by ATK to Atlas and the Atlas invoices related to them. These statements show that he reviewed the relevant documents sufficiently to have "personal knowledge," and so is competent to create an affidavit about them. *See Brooks*, 425 F.3d at

1111–12; *Warner Bros. Entm't*, 644 F.3d at 592. Therefore, GCS's motion to strike these affidavits is denied. *See* Fed. R. Civ. P. 56(c)(4).

## II. There are genuine disputes of facts material to two of the claims against ATK.

The Court turns to ATK's motion, which seeks summary judgment on three counts in GCS's First Amended Complaint (Doc. 137): breach of contract (Count III); promissory estoppel (Count IV); and enforcement of its rights as a third-party beneficiary (Count V).[2] Summary judgment is appropriate on Count IV only.

### A. A reasonable jury could find that ATK made a contract with GCS to issue it two-party checks.

Count III alleges that ATK contractually agreed with GCS to issue it two-party checks. By ceasing to issue two-party checks to GCS, ATK purportedly breached that contract. ATK argues that there is no valid and enforceable contract between it and GCS.

A claim for breach of contract requires the existence of a contract. *Keveney v. Mo. Military Acad.*, 304 S.W.3d 98, 104 (Mo. 2010). A contract exists upon offer and acceptance, which collectively require "mutual assent" or "a meeting of the minds of the parties." *Newman v. Schiff*, 778 F.2d 460, 465 (8th Cir. 1985) (applying Missouri law). Assent is mutual if the acceptance is "in exact accordance with the offer." *S. Real Estate & Fin. Co. v. Park Drug Co.*, 126 S.W.2d 1169, 1172–73 (Mo. 1939). This is measured by "what a reasonably prudent person would be led to believe from the actions and words of the parties." *Hall v. Fox*, 426 S.W.3d 23, 26 (Mo. Ct. App. 2014). Mutual assent "does not depend upon the state of the parties' minds; it depends on their overt acts." *Newman*, 778 F.2d at 464.

Here, there is sufficient evidence for a reasonable jury to conclude that ATK and GCS mutually assented to the terms of a contract. Through David's email, GCS made an offer to

---

[2] ATK moves for summary judgment on a fourth count, civil conspiracy to breach contract (Count VI), in a separate, unripe motion (Doc. 140).

ATK: to issue checks under Purchase Order D37395 to both Atlas and GCS, instead of Atlas alone. ATK manifested an intent to accept that offer. It received and internally discussed the offer. It then modified Purchase Order D37395 in precisely the manner that GCS requested, by adding language stating, "FOR THIS ORDER ONLY PAYMENT MUST BE MADE TO: ATLAS INDUSTRIAL SOLUTIONS/GLOBAL CONTROL SYSTEMS." ATK did not reject GCS's proposal, either explicitly or implicitly. It communicated its acceptance by performing exactly under this alteration for two and a half years.

A "reasonably prudent person," in light of this evidence, could conclude that ATK objectively accepted the offer, even though ATK never verbally responded to GCS. *See Hall*, 426 S.W.3d at 26; *S. Real Estate & Fin. Co.*, 126 S.W.2d at 1172–73. If ATK lacked the *subjective* intent to accept GCS's offer, such is irrelevant. *See Newman*, 778 F.2d at 464.

A reasonable jury could thus determine that there was mutual assent to a contract between ATK and GCS. *See id.* at 465. Summary judgment is denied on this ground. *See Keveney*, 304 S.W.3d at 104.[3]

However, ATK's argument that its contractual obligation is limited to Purchase Order D37395 is well taken. David's email offer was limited to Purchase Order D37395, which was the only purchase order in effect at the time. Insofar as Count III pertains to any other contract besides the one described above, the Court grants summary judgment to ATK on those grounds.

**B. Because GCS has adequate legal remedies, there is no genuine dispute over whether GCS is entitled to a claim of promissory estoppel.**

In Count IV, GCS asks for promissory estoppel, claiming that it detrimentally relied on ATK's promise to issue two-party checks. ATK counters that because GCS seeks a legal

---

[3] A contract must also have consideration. *See Keveney*, 304 S.W.3d at 104. Although the Court questions whether consideration was present for this contract, ATK has not made this argument.

remedy—money it was due under that purchase order—it is not entitled to promissory estoppel, an equitable remedy.

"Promissory estoppel allows courts to enforce a promise on equitable grounds, even where parties did not enter into a contract." *City of St. Joseph v. Sw. Bell Tel.*, 439 F.3d 468, 477 (8th Cir. 2006) (applying Missouri law). Generally, a plaintiff cannot maintain a promissory estoppel claim "if an adequate remedy at law exists." *Clevenger v. Oliver Ins. Agency, Inc.*, 237 S.W.3d 588, 591 (Mo. 2007). In determining whether the plaintiff has an adequate remedy at law, a court examines whether the plaintiff is seeking specific performance of the promise, or monetary damages for the defendant's failure to perform the promise. *Zipper v. Health Midwest*, 978 S.W.2d 398, 412 (Mo. Ct. App. 1998); *Clevenger*, 237 S.W.3d at 590–91 (applying *Zipper*).

GCS seeks "damages" from ATK, "in an amount to be proven at trial." Am. Compl. ¶ 78 (Doc. 137). Nowhere does GCS seek specific performance of ATK's supposed promise to issue two-party checks. *See also id.* at 17–18 (prayer for relief). Even if it had sought to force ATK to reissue two-party checks, this would result only in GCS receiving money, which is a legal remedy. *See Glenn v. HealthLink HMO, Inc.*, 360 S.W.3d 866, 877 (Mo. Ct. App. 2012) (applying *Clevenger*). And GCS is able to recover this money, albeit through another avenue: breach of contract. Because GCS has an adequate remedy at law that precludes its promissory estoppel claim, there is no "injustice that only enforcement [of ATK's promise] could cure" here.[4] *See Clevenger*, 237 S.W.3d at 590–91; *Zipper*, 978 S.W.2d at 412. The Court grants summary judgment to ATK on Count IV.

---

[4] GCS argues that it may plead its claims in the alternative, so the breach of contract claim does not undermine the promissory estoppel claim. *See* Fed. R. Civ. P. 8(d). However, the promissory estoppel claim is intrinsically flawed, and does not require comparison to other claims in the Amended Complaint.

### C. There is a genuine dispute over whether ATK and Atlas intended for GCS to be a third-party beneficiary of Purchase Order D37395.

In Count V, GCS attempts to enforce its rights as a third-party beneficiary of Purchase Order D37395, which was between Atlas and ATK. ATK argues that GCS, as a nonsignatory, has no standing to enforce this contract.

A party may maintain a breach of contract claim, even though it was not a party to that contract, so long as it was a third-party beneficiary of the contract. *L.A.C. ex rel. D.C. v. Ward Parkway Shopping Ctr. Co.*, 75 S.W.3d 247, 260 (Mo. 2002). "[N]ot every person who is benefited by a contract may bring suit to enforce that contract[;] only those third-parties who are clearly intended beneficiaries may do so." *Verni v. Cleveland Chiropractic Coll.*, 212 S.W.3d 150, 153 (Mo. 2007). For a third-party beneficiary to recover on the contract, "the terms of the contract must express directly and clearly an intent to benefit an identifiable person." *L.A.C.*, 75 S.W.3d at 260. "[I]t is not necessary for the parties to the contract to have as their 'primary object' the goal of benefiting the third parties, but only that the third parties be primary beneficiaries." *Id.*

There are two types of "primary beneficiaries" who have enforceable rights as third-party beneficiaries. *Id.* A third party is a beneficiary if it is a donee, meaning the contract's purpose was to bestow a gift on the third party, or if it is a creditor, meaning the contract's purpose was to discharge a duty of the contracting parties to the third party. *Id.* A party that benefits only collaterally from the contract is an incidental beneficiary not entitled to recovery. *State ex rel. William Ranni Assocs., Inc. v. Hartenbach*, 742 S.W.2d 134, 140–41 (Mo. 1987).

Here, a reasonable jury could find that Purchase Order D37395 expresses an intent to benefit GCS. Its primary purpose was for Atlas to perform work for ATK in exchange for payment. Practically however, before Atlas could work for ATK, it had to resolve its two-party

9

check dispute with GCS. To help Atlas resolve this dispute and thus be able to work for ATK, the purchase order required ATK to issue two-party checks to both Atlas and GCS, a party identified by name. Without concurrent payment to GCS, ATK would not pay Atlas for its work. This capitulation was apparently, on the face of the purchase order, a discharge of Atlas's collateral duty to GCS.

Purchase Order D37395's language creates a genuine dispute over whether GCS is more than an incidental beneficiary of the purchase order, and thus entitled to enforce it as a third-party creditor beneficiary. *See Peters v. Emp'rs Mut. Cas. Co.*, 853 S.W.2d 300, 301 (Mo. 1993) (Benton, J.) (finding that two faculty members who lost personal property in a fire at their college's facility were third-party beneficiaries of a policy between the college and its insurer to cover the facility's contents, because individuals' personal property were mentioned twice in the contract and because in the event of property loss, the policy would bypass the college and indemnify only the property owners); *cf. Verni*, 212 S.W.3d at 153 (finding that a student of chiropractic medicine was not a third-party beneficiary of the employment contract between the school and a professor, because the contract's only specific reference to students was to nebulously oblige the professor to treat students with courtesy, respect, fairness, and professionalism, which did not "clearly express intent to benefit" the students).

Finally, ATK argues that even if GCS is entitled to enforce the two-party check requirement in Purchase Order D37395, it cannot maintain a claim for breach of that contract. *See L.A.C.*, 75 S.W.3d at 262 ("[A third-party beneficiary] has a right to bring suit and recover if [it] can also establish breach that caused damages."). ATK argues that there was no breach, because "ATK fully and completely paid Atlas/Luebbert for all work performed at Lake City under the various purchase orders." This claim is belied by the record, which suggests ATK

10
Case 4:14-cv-00657-DGK   Document 149   Filed 02/10/16   Page 10 of 11

failed to pay a two-party check to Atlas for at least Atlas Invoice Nos. 57, 80, 81, 82, 83, 84, and 85. Therefore, GCS can maintain its claim that ATK breached Purchase Order D37395. The Court denies summary judgment to ATK on Count V.

Because Purchase Order D37395 stated that its two-party check arrangement applied to "THIS ORDER ONLY," that particular purchase order is the only one on which GCS can maintain a third-party beneficiary claim. To the extent that Count V endeavors to apply to other contract, summary judgment to granted to ATK on those grounds.

## Conclusion

In view of the foregoing, GCS's motion to strike ATK's affidavit in support of its motion for summary judgment (Doc. 117) is DENIED. ATK's motion for summary judgment (Doc. 108) is GRANTED as to Count IV only. The Court limits Counts III and V to pertain only to Purchase Order D37395.

**IT IS SO ORDERED.**

Date:  February 10, 2016  　　　　　　　　　　 /s/ Greg Kays
　　　　　　　　　　　　　　　　　　　　　　GREG KAYS, CHIEF JUDGE
　　　　　　　　　　　　　　　　　　　　　　UNITED STATES DISTRICT COURT