IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| GLOBAL CONTROL SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:14-CV-657-DGK |
| | ) | |
| DEREK LUEBBERT, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER GRANTING SUMMARY JUDGMENT TO DEFENDANT MIDWEST**

This case arises out of a soured business relationship between Plaintiff Global Control Systems, Inc. ("GCS"), and its former employee, Defendant Derek Luebbert ("Luebbert"). Before he left GCS, Luebbert founded his own company, Defendant Atlas Industrial Solutions LLC ("Atlas"), and began soliciting work from a GCS client, Alliant Techsystems Inc. ("ATK"). He has also worked at ATK with Defendant Midwest Controls, LLC ("Midwest"), a competitor to GCS.

Now before the Court is Midwest's motion for summary judgment on Count VI, a civil conspiracy claim (Doc. 140). For the reasons below, the motion is GRANTED.

**Background[1]**

In August 2006, Luebbert began working for GCS as a controls engineer. GCS assigned Luebbert to work as its representative at ATK's Lake City Army Ammunition Plant. As a condition of his employment, Luebbert signed a contract which prohibited him from competing with GCS for three years after he left the company.

---

[1] The parties vigorously contest which facts are relevant and what inferences from those facts are reasonable. This section omits facts properly controverted by GCS, immaterial facts, facts that are not properly supported by admissible evidence, legal conclusions, and argument presented as fact. *See* Fed. R. Civ. P. 56(c); L.R. 56.1(a). Although a jury could draw different inferences from these facts, the Court must here state the facts in the light most favorable to GCS as the nonmoving party. *See Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

Luebbert resigned from GCS in May 2010 and began working for ATK through a company he had founded, Atlas. At some point, Midwest worked for Atlas as a subcontractor.

After GCS found out about this, it entered into two contracts with Luebbert and Atlas in 2010 and 2011: a "Settlement Agreement" and an "Amendment." In those contracts, Luebbert and Atlas generally agreed to pay GCS fifty percent of all revenue earned off their ATK purchase order. ATK would use two-party checks to pay Atlas and GCS. In return, GCS would not enforce the non-compete agreement until Luebbert and Atlas concluded work on their ATK purchase order.

In November 2013, Luebbert and Atlas began working at ATK not under their own names, but as subcontractors for Midwest. Because this was under a separate purchase order, this work was not subject to their revenue-sharing agreement with GCS. Accordingly, Luebbert and Atlas could keep 100 percent of all revenue that Midwest paid them.

Midwest knew that GCS makes its employees sign three-year non-compete agreements like Luebbert's. For example, Midwest tried to hire a former GCS employee named Andy Wendte, but was unable to because of his non-compete agreement. Midwest also knew that Luebbert used to work for GCS, but it apparently did not know when he did so. However, Midwest did not know about the Settlement Agreement or Amendment.

**Standard**

A moving party is entitled to summary judgment on a claim if it "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine dispute over a material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,*

2

*Inc.*, 477 U.S. 242, 248 (1986). The court makes this determination by viewing the facts in the light most favorable to the nonmoving party. *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014).

### Discussion

GCS's complaint alleges that Luebbert and Atlas breached their contracts by working at ATK through Midwest instead of in their own names, thus evading the two-party-check, revenue-sharing, and non-compete provisions. In Count VI, GCS claims that Midwest committed civil conspiracy by suborning this breach. Midwest moves for summary judgment on that count, arguing that there is no genuine dispute that it lacked the meeting of the minds sufficient to establish a conspiracy.

To establish a civil conspiracy, a plaintiff must prove that the defendants had a "meeting of the minds" to further the conspiracy. *Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 781 (Mo. 1999). A meeting of the minds is present if each participant acted with "a unity of purpose or a common design and understanding." *Id.*

Assuming that Luebbert and Atlas conspired to breach their contracts, no record evidence establishes that Midwest knew about their mission, much less their contracts, at the time they breached them. Without this knowledge, Midwest could not have had a meeting of the minds to breach the contracts.

At most, Midwest knew that GCS ordinarily made its employees sign a three-year non-compete agreement, but there is no evidence that Midwest knew Luebbert's non-compete clause remained in effect longer than three years after his termination date. Beyond the non-compete clause, there is no evidence that GCS usually made its employees agree to share revenue or submit to two-party checks if they left GCS. Because Midwest had no reason to believe that GCS and Luebbert had modified his original employment contract, no reasonable jury could

conclude that Midwest knew of any two-party-check, revenue-sharing, or non-compete provisions to be breached.

Finally, GCS argues Midwest's actions—that is, swapping roles with Atlas and letting Atlas become the subcontractor—support an inference that it knew of the Settlement Agreement or Amendment and was trying to help Atlas evade those contracts' terms. The Court disagrees that the standard accounting and bidding practices of the engineering field are within the average juror's range of knowledge. No reasonable jury, without more evidence or resort to speculation, could fairly conclude that Midwest lacked a neutral reason to conduct the business practices that it did.

Without a meeting of the minds to commit breach of contract, GCS cannot prove its conspiracy count. Summary judgment is granted to Midwest.

## Conclusion

In view of the foregoing, Midwest's motion for summary judgment (Doc. 140) is GRANTED. Judgment is entered in Midwest's favor on Count VI of the First Amended Complaint.

**IT IS SO ORDERED.**

Date:  March 9, 2016         /s/ Greg Kays
GREG KAYS, CHIEF JUDGE
UNITED STATES DISTRICT COURT